*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0139p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

AUSTIN DAVENPORT; KENDRA DAVENPORT,
Individually and as Co-Executors of the Estate of
Ben Davenport, deceased,

>Nos. 07-5168/5215

>*Plaintiffs-Appellees,*

*v.*

SAM CAUSEY, Individually and in his official
capacity as a police officer for the City of Crossville,
Tennessee (07-5168); CITY OF CROSSVILLE,
TENNESSEE (07-5215),

>*Defendants-Appellants.*

.

Appeal from the United States District Court
for the Middle District of Tennessee at Cookeville.
No. 06-00043—William J. Haynes, Jr., District Judge.

Argued: October 26, 2007

Decided and Filed: April 4, 2008

Before: BOGGS, Chief Judge; KENNEDY, Circuit Judge; JORDAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Robert H. Watson, Jr., WATSON, ROACH, BATSON, ROWELL & LAUDERBACK, Knoxville, Tennessee, Daniel H. Rader, III, MOORE, RADER, CLIFT and FITZPATRICK, P.C., Cookeville, Tennessee, for Appellants. Amy V. Hollars, Livingston, Tennessee, for Appellees. **ON BRIEF:** Robert H. Watson, Jr., WATSON, ROACH, BATSON, ROWELL & LAUDERBACK, Knoxville, Tennessee, Daniel H. Rader, III, MOORE, RADER, CLIFT and FITZPATRICK, P.C., Cookeville, Tennessee, for Appellants. Amy V. Hollars, Livingston, Tennessee, Jon E. Jones, LAW OFFICE OF JON E. JONES, Cookeville, Tennessee, for Appellees.

---

[*]The Honorable R. Leon Jordan, Senior United States District Judge for the Eastern District of Tennessee, sitting by designation.

---

## OPINION

---

KENNEDY, Circuit Judge. Officer Samuel E. Causey and the City of Crossville, Tennessee ("defendants") appeal the decision of the district court denying them qualified immunity and therefore denying them summary judgment. Mr. Ben Davenport, the father of Austin and Kendra Davenport ("plaintiffs"), was shot by Officer Causey during an attempted arrest following a routine traffic stop. Plaintiffs sued,[1] claiming that Officer Causey had used excessive force, and that the City of Crossville inadequately trained its officers on the constitutional use of force. Both defendants moved for summary judgment based on the qualified immunity of Officer Causey. The district court denied their motions, holding that there were genuine issues of material fact. Upon our review of the evidence in the light most favorable to the plaintiffs, we conclude that the force used was constitutionally reasonable and, therefore, that plaintiffs have failed to establish a constitutional violation. We accordingly reverse the district court's judgment and remand with instructions to enter summary judgment for the defendants on the plaintiffs' § 1983 claims.

## BACKGROUND

### I. Procedural Background

Austin and Kendra Davenport sued both Officer Causey and the City of Crossville, his employer. The plaintiffs alleged that Officer Causey used excessive force in violation of the Fourth Amendment and that he was therefore liable under 42 U.S.C. § 1983 (2006). The plaintiffs also alleged that the City of Crossville, was liable under § 1983 for failing to train its police officers on the proper, constitutional use of force. The plaintiffs additionally asserted state law claims against both Officer Causey and the City of Crossville. Both defendants, Officer Causey and the city, moved for summary judgment on all the plaintiffs' claims. Officer Causey based his motion on qualified immunity, arguing that his actions did not violate the Constitution and that even if they did, it was not clearly established that such actions would violate the Constitution. The city joined in the argument that Officer Causey's actions did not violate the Constitution, and therefore asserted that it too was entitled to summary judgment. The district court denied summary judgment to both defendants, and both appealed.

### II. Factual Background

The traffic stop that gave rise to this cause of action began on June 16, 2005 at 7:58:43 AM and ended with Mr. Davenport shot at 7:59:51 AM. Thus, the events occurred in just over a minute. Because this is an appeal from the denial of summary judgment for the defendants, we recite the undisputed facts and the disputed facts in the light most favorable to the plaintiffs. *See Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 485 (6th Cir. 2007). Because the district court did not identify what facts it found in dispute when it denied Officer Causey qualified immunity, we have to engage in "a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." *Johnson v. Jones*, 515 U.S. 304, 319 (1995). The facts in the record come from the deposition testimonies of Officer Causey and Officer Larry Pugh, and from a video produced by Officer Causey's vehicle's dash camera, which started when Officer Causey activated the lights on his marked police car and which displays, without

---

[1]Plaintiffs are suing in both their individual capacities, as children of the decedent, as well as in their capacity as executors of Mr. Davenport's estate.

sound,[2] all but three seconds of Officer Causey's, Officer Pugh's, and Mr. Davenport's pertinent movements after the traffic stop was initiated.

Officer Causey testified that Mr. Davenport became belligerent following a routine traffic stop. On the morning of June 16, Officer Causey activated his lights and siren on his marked police car to initiate a traffic stop of Mr. Davenport for speeding. Both Officer Causey and Mr. Davenport pulled their vehicles to the side of the road. Mr. Davenport then exited his car and walked to its rear. Officer Causey similarly exited his vehicle and walked toward Mr. Davenport. Officer Causey testified that he repeatedly instructed Mr. Davenport to return to his vehicle in a firm voice that did not amount to shouting. Mr. Davenport failed to comply with Officer Causey's repeated instruction. Despite repeated commands to reenter his vehicle, Mr. Davenport only moved toward the side of his car and leaned against it with his arms folded. Officer Causey at this point considered Mr. Davenport to be noncompliant, and Officer Causey therefore requested backup. Officer Causey testified that Mr. Davenport then asked if Officer Causey "was going to write him a damn ticket," to which Officer Causey responded affirmatively while reiterating that Mr. Davenport needed to return to his car. Officer Causey took this statement and Mr. Davenport's body language as acts of aggression, and considered himself to be in danger because Mr. Davenport did the opposite of what Officer Causey was requesting.

Officer Causey decided it was time to place Mr. Davenport in custody. Mr. Davenport stood five feet, nine inches tall, weighed 277 pounds, and was forty-four years old at the time. Officer Causey was five feet, eight-and-a-half inches tall, weighed 200 pounds, and was thirty-four years old. The video shows that when Officer Causey reached for Mr. Davenport, Mr. Davenport brushed Officer Causey's hand away. Officer Causey considered this action to be aggressive, particularly combined with his failure to comply with Officer Causey's requests to return to his vehicle. Officer Causey testified that this was the first moment that he became afraid of Mr. Davenport.

"Given how [Mr. Davenport] had been acting and the totality of the circumstances [at] that point, [Officer Causey] made the decision that [he] needed to deploy the Taser." Officer Causey had stepped out of range of the video camera and removed his Taser from the pocket. At the time Officer Causey drew his Taser, Mr. Davenport said " 'don't you even.' " Forty-six seconds after the traffic stop was initiated, Officer Causey deployed his Taser, the prongs of which, it appears from the video, strike and stick in Mr. Davenport's chest. Mr. Davenport grabbed the wires for a split second, and then he charged toward the source of the wires, out of range of the video camera. Officer Causey believed that the Taser did not work, and was surprised that it failed, because Mr. Davenport did not respond the way Officer Causey had expected, which was to fall to the ground incapacitated.[3]

The two left camera range at 7:59:30, and Mr. Davenport returned three seconds later, at 7:59:33. Officer Causey maintained that Mr. Davenport struck him during this time. He asserted that Mr. Davenport came within arm's reach, "[c]lose enough to land a blow." Officer Causey only remembered "the sensation of being hit as [Mr. Davenport] came and swung [with his fist] . . . ."

When Mr. Davenport returns to the camera range, he had started pulling the Taser away from Officer Causey. He reentered the range of the video camera walking backward facing the direction of the source of the wires, pulling on the wires, and wrapping the slack around his hand. At this

---

[2] Officer Causey was supplied a body microphone, but it was off because it was in the charger. The microphone inside his vehicle captured a couple of muffled sounds, such as the gunshot.

[3] Officer Causey expected incapacitation because that was the result obtained when he had used the Taser on prior occasions, including use on fellow officers during training. Incapacitation was also the result Officer Causey had personally experienced when the Taser was used by other officers on Officer Causey during training.

point, Officer Pugh arrived. Officer Pugh saw the wires, and saw that Mr. Davenport "was fooling with them." Mr. Davenport then stopped walking backward roughly at the front passenger side door of his vehicle as he continued to pull and wrap the Taser wires. Officer Causey was worried that he was about to lose control of his Taser due to Mr. Davenport's pulling.

As Mr. Davenport continued to wrap the wires around his hand, Officer Causey decided to approach him again, and to now use the Taser in "drive stun format[4] to hopefully bring compliance and place [Mr. Davenport] in custody." Officer Causey approached Mr. Davenport intending to arrest him.

Mr. Davenport began assaulting Officer Causey as Officer Causey reached for Mr. Davenport with his Taser, which, according to Officer Causey, "did appear that it was delivering a shock." The video shows that Mr. Davenport's first blow hit Officer Causey in the shoulder, near Officer Causey's head. Mr. Davenport's second blow, delivered within the same second as the first, hit Officer Causey "[t]owards the abdomen and the right arm." This blow caused Officer Causey to lose control of and drop the Taser. Mr. Davenport's third blow hit Officer Causey on the side of his head, more toward the base of the neck, and caused Officer Causey to fall to the ground.

While Officer Causey was mid-fall, Officer Pugh had approached from the rear of Mr. Davenport's car and began reaching for Mr. Davenport to place Mr. Davenport under arrest. Mr. Davenport turned his attention to Officer Pugh and began assaulting him in the same manner as he had Officer Causey. Officer Pugh was sixty years old, and appeared to be roughly the same size as Officer Causey. Mr. Davenport's first blow appeared to hit Officer Pugh in the left side of the neck or left shoulder. Officer Causey stated that from his perspective, Officer Pugh was hit "on the head." Mr. Davenport's second blow, delivered within one second of the first and within one second of putting Officer Causey on the ground, hit Officer Pugh on the top of the head, and caused him to start to bend over. Mr. Davenport then hit Officer Pugh on the top of the head for a second time, causing Officer Pugh to stagger backward. After delivering the third blow, Mr. Davenport immediately began raising his fist to hit Officer Pugh again.

At this point in time, Officer Causey believed that Officer Pugh was in mortal danger. Officer Causey testified that:

> Mr. Pugh appeared to be impaired by the [third] blow. . . . His eyes rolled back in his head. . . . Officer Pugh, you know, being – appearing to be stunned, appeared to – you know, the eyes rolled back when he was hit. . . . Like [] in a boxing match, the – just prior to somebody being knocked out, when the eyes roll and their body begins to go, as they're stunned.

Officer Causey shot Mr. Davenport before he was able to hit Officer Pugh a fourth time. When Officer Causey shot Mr. Davenport, he was "fully in possession of [his] mental abilities" and he "had full judgment about what [he] w[as] doing." Officer Causey shot Mr. Davenport because he believed "if [he] didn't stop [Mr. Davenport], that he was going to seriously injure Officer Pugh or possibly kill him." Officer Causey was also concerned that if Mr. Davenport "compromised" Officer Pugh, Mr. Davenport could have taken Officer Pugh's weapon.

---

[4]Officer Causey had released the cartridge on the end of the Taser when Mr. Davenport began pulling on the Taser's wires because Officer Causey did not want to lose control of the Taser. Once the cartridge is released from the Taser, it can no longer be used to shoot a suspect and deliver voltage from afar. It can, however, be used to deliver a shock by depressing the button and placing the electrodes on the end of the Taser in contact with an individual's body, which is the "drive stun" format.

The plaintiffs only dispute two portions of Officer Causey's testimony. Plaintiffs assert that Mr. Davenport did not strike Officer Causey while both were out of range of the video camera. Plaintiffs also assert that Officer Causey could not have seen the white of Officer Pugh's eyes from his position on the ground after Mr. Davenport's third blow.

After careful review of the video, we accept that there may be an evidential dispute as to whether the off-camera blow occurred. The time both were off camera was short, only amounting to three seconds. Also, Mr. Davenport reentered the video walking backwards slowly, which plaintiffs argue is not the way a person would be walking after striking an officer. Additionally, Officer Causey does not specifically remember where he was hit. He knows it was on the front side of his body and knows that it was not in the face or above his neck, but he can neither affirm nor deny whether he was hit on his arm, in his groin, or in his stomach. Officer Causey also does not recall whether Mr. Davenport hit him with his right or left hand. Despite being struck, Officer Causey did not drop the Taser and he continued to depress the button so as to deliver voltage. Although Officer Causey recounted this blow in his deposition, he failed to include it in his statement to the Tennessee Bureau of Investigation, he did not go back to correct his statement, and he failed to tell the Chief of Police about the blow. Given all of this, plaintiffs have advanced some circumstantial evidence that might, when viewing the evidence most favorably to them, lead a reasonable jury to conclude that the off-camera blow did not occur.

Plaintiffs also argue that there is an evidentiary dispute as to whether Officer Causey could see the whites of Officer Pugh's eyes and the expression on Mr. Davenport's face after Mr. Davenport hit Officer Pugh for the third time, which Officer Causey testified was the reason he believed it necessary to shoot Mr. Davenport. Plaintiffs point to two primary arguments to support the conclusion that Officer Causey did not see Officer Pugh's eyes and Mr. Davenport's face. First, Officer Causey began drawing his weapon prior to the blow that allegedly caused Officer Pugh's eyes to roll. At 7:59:50 Officer Causey released Mr. Davenport's overalls and began to reach for his gun. At that point, Officer Pugh had only been hit twice by Mr. Davenport. Officer Causey stated that it was the last blow, the third, that caused Officer Pugh's eyes to roll, and that last blow occurred at 7:59:51. Plaintiffs also contend there is a factual dispute as to whether Officer Causey would have been able to see Officer Pugh's eyes so as to tell if they rolled to the whites. Officer Causey was on the ground when he shot Mr. Davenport, and the angle would make it difficult for him to see Officer Pugh's eyes. Additionally, Officer Causey asserted that he not only saw Officer Pugh's eyes go to the whites because they were in his "main field of vision" and he was "focused on Mr. Pugh," but at the very same time he was also able to observe the "intense, angry look on [Mr. Davenport's] face." Plaintiffs assert that this range of vision was impossible given the distance between Officer Pugh's face and Mr. Davenport's face. Indeed, defendants conceded at oral argument that it would have been difficult for Officer Causey to have in fact seen Officer Pugh's eyes given the circumstances. We therefore have analyzed whether the defendants are entitled to summary judgment absent these factual allegations.

## ANALYSIS

Defendants argue on appeal that the district court erred in denying summary judgment based on qualified immunity. Grants of summary judgment are reviewed de novo. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 619 (6th Cir. 2006). When the defendant raises qualified immunity, the plaintiff bears the burden of proving that the defendant is not entitled to summary judgment. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). Despite this burden of proof, the facts are still viewed in the light most favorable to the plaintiff, who is the non-movant. Fed. R. Civ. P. 56(c). If there are genuine issues of material fact, we must view them most favorably to the plaintiffs. *See Johnson v. Jones*, 515 U.S. 304, 313 (1995) ("[D]etermin[ing] only a question of 'evidence sufficiency,' *i.e.*, which facts a party may, or may not, be able to prove at trial . . . is not appealable.").

Once the facts are determined in the light most favorable to the plaintiffs, we can review the legal question of qualified immunity given that scenario, even if the defendant fails to concede the plaintiffs' version of the facts for purposes of appeal. *See Smith v. Cupp*, 430 F.3d 766, 771-72 (6th Cir. 2005). Questions of law are reviewed de novo. *Johnson v. Jones*, 149 F.3d 494, 499 (6th Cir. 1998). We find that Officer Causey and the City of Crossville are entitled to summary judgment because the facts, even when viewed most favorably to the plaintiffs, do not constitute a constitutional violation.

### I. Officer Causey's Qualified Immunity

Qualified immunity for a police officer in his individual capacity involves a two-step analysis. "[T]he first inquiry must be whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). If no constitutional violation occurred, the inquiry is over and summary judgment must be granted to the officer.

Plaintiffs allege that Officer Causey violated the Fourth Amendment, which prohibits unreasonable searches and seizures, when he shot Mr. Davenport. "[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). This "reasonableness requirement" means that "the force used to effect a particular seizure," here the shooting, must be found reasonable after "careful[ly] balancing [] ' "the nature and quality of the intrusion on the individual's Fourth Amendment interest" ' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Garner*, 471 U.S. at 8 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983))).

"The intrusiveness of a seizure by means of deadly force is unmatched. The suspect's fundamental interest in his own life need not be elaborated upon." *Id.* at 9. Given the extreme intrusion caused by use of deadly force, the countervailing governmental interests must be weighty indeed; "only in rare instances may an officer seize a suspect by use of deadly force." *Whitlow v. City of Louisville*, 39 F. App'x 297, 302-03 (6th Cir. 2002) (unpublished).

The government's interest in using deadly force to effect a seizure varies based upon the circumstances faced by the officers; "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," and so the question is whether the amount of force used by the officer was excessive. *See Graham*, 490 U.S. at 396. *Garner* stated that deadly force can be used when "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others . . . ." 471 U.S. at 11-12. "Probable cause," while "incapable of precise definition," *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (unanimous), means that the facts and circumstances of which the officer is aware and are reasonably viewed as accurate are "sufficient unto themselves to warrant a man of reasonable caution to believe that" deadly force is necessary, *see Berger v. New York*, 388 U.S. 41, 55 (1967).

There are certain facts and circumstances that have been held to be important when evaluating whether an officer has probable cause to believe deadly force necessary. The most common considerations are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. While these are the most common considerations, they are not "a magical on/off switch that [constitute] rigid preconditions" to determine whether an officer's conduct constituted excessive force. *Scott v. Harris*, 127 S. Ct. 1769, 1777 (2007). Another consideration is "the number of lives at risk" from the suspect's conduct, as well as the "relative culpability" of those at risk. *Id.* at 1778. We have also found that " 'the demeanor of the suspect,' " *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 174 (6th Cir.

2004) (quoting *Minchella v. Bauman*, 72 F. App'x 405, 408 (6th Cir. 2003) (unpublished)), and "the size and stature of the parties involved" should be taken into account, *id.* More force is also proper, which could include deadly force, if the suspect was fighting with the police, *Untalan v. City of Lorain*, 430 F.3d 312, 317 (6th Cir. 2005), or was intoxicated and noncompliant, *Monday v. Oullette*, 118 F.3d 1099, 1104-05 (6th Cir. 1997). Every new case can also present new circumstances that are relevant in determining whether that particular situation required deadly force; there is no "easy-to-apply legal test in the Fourth Amendment context," *Scott*, 127 S. Ct. at 1778, and instead judges are to look to the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act," *Pringle*, 540 U.S. at 370.

The officer must also be given some leeway when a court analyzes the reasonableness of his decision. It is firstly important to remember what is a "reasonable" belief could also be a mistaken belief, and that the fact it turned out to be mistaken does not undermine its reasonableness as considered at the time of the acts. *See Saucier*, 533 U.S. at 205. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Additionally, more leeway is provided to the officer in determining reasonableness when the "circumstances [] are tense, uncertain, [or] rapidly evolving," and the officer is therefore forced to "make [a] split-second judgment[]." *Id.* at 397. We have stated this otherwise as a court being required to provide a " 'measure of deference to the officer's on-the-spot judgment about the level of force necessary.' " *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006) (quoting *Burchett v. Keifer*, 310 F.3d 937, 944 (6th Cir. 2002)). This "measure of deference" " 'carries great weight' when 'all parties agree that the events in question happened very quickly,' as here." *Untalan*, 430 F.3d at 315 (quoting *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992).

There are also facts and circumstances that should not be considered. The facts and circumstances are viewed objectively, from the perspective of a reasonable officer, and therefore the subjective intent or motivation of the officer is irrelevant. *Graham*, 490 U.S. at 397. Also irrelevant, despite plaintiffs' argument to the contrary, is whether or not the officer had other means of force at his disposal. "[T]he Fourth Amendment does not require officers to use the best technique available as long as their method is reasonable under the circumstances." *Dickerson v. McClellan*, 101 F.3d 1151, 1160 (6th Cir. 1996); *see Lyons v. City of Xenia*, 417 F.3d 565, 576 (6th Cir. 2005) ("The question is whether the undisputed facts 'demonstrate that a hypothetical reasonable officer' would have 'known that his actions, under the circumstances, were objectively unreasonable,' not whether [the] [o]fficer [] used the least intrusive means available." (quoting *Scott v. Clay County*, 205 F.3d 867, 877 (6th Cir. 2000)) (citations omitted)); *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 775 (6th Cir. 2004).

With these considerations in mind, we "slosh our way through the factbound morass of 'reasonableness.' " *See Scott*, 127 S. Ct. at 1778. There were many factors counseling force. For instance, Mr. Davenport was noncompliant with Officer Causey's repeated instructions. *Cf. Monday*, 118 F.3d at 1104. Mr. Davenport also actively resisted arrest and attacked two officers, first Officer Causey and then Officer Pugh. *Cf. Untalan*, 430 F.3d at 317. Mr. Davenport's son stated that his father had "a lot of physical strength and . . . brute force," and he believed his father was "strong enough to injure a man that he struck . . . with his fist." Mr. Davenport had used enough force to knock Officer Causey down and had delivered blows to Officer Causey, which provided Officer Causey an appreciation of Mr. Davenport's strength. Officer Causey was a larger man himself with SWAT training and yet Mr. Davenport was able to knock him to the ground. Mr. Davenport had used closed-fisted blows, and "closed-fisted blow[s] . . . may constitute deadly force." *Sallenger v. Oakes*, 473 F.3d 731, 740 (7th Cir. 2007). Mr. Davenport had also used closed-fisted blows when attacking Officer Pugh, and he delivered these closed-fisted blows to Officer Pugh's head, an area where blows may well be more likely to cause serious physical injury or death. Mr. Davenport's demeanor was irrationally angry, *cf. Solomon*, 389 F.3d at 174, and he was a large

man, weighing 277 pounds and standing five feet, nine inches tall. *Cf. id.*; *Monday*, 118 F.3d at 1104-05. It is important to remember that Mr. Davenport had only been stopped for speeding, and yet was reacting in such a violent and angry manner.

We must also add a measure of deference to Officer Causey's on-the-spot determination in a rapidly evolving situation about the level of force Mr. Davenport was using, and therefore the appropriate level of force with which to respond. The total time from Mr. Davenport's exit from his vehicle to Mr. Davenport being shot was one minute and eight seconds. The time from Mr. Davenport beginning to strike Officer Causey to Mr. Davenport being shot was, as we noted, merely four seconds. Once Mr. Davenport began his attack, things evolved very rapidly, which provided Officer Causey less time for, and requires us to give more deference to, on-the-spot decisionmaking.

This situation is similar to *Colston v. Barnhart*, 130 F.3d 96 (5th Cir. 1997), where the Fifth Circuit held there was no constitutional violation from the officer's use of deadly force. The two officers in that case were also facing a noncompliant and larger individual who "had violently and forcefully resisted the officers' attempts to gain control of him." *Colston*, 130 F.3d at 99. The suspect in that case had knocked unconscious one of the officers on the scene and had knocked down the other. *Id.* at 98. At that point, the suspect was standing above the officers and began walking in the direction of the officer's vehicle. Because the conscious officer believed the suspect could either unleash a further assault on him while he was on the ground or the suspect could retrieve a weapon from the officer's police car, the officer shot the suspect. *Id.* at 99-100.

While neither Officer Pugh nor Officer Causey had been knocked unconscious, the situation here was similar enough to allow the use of deadly force without violating the Constitution. The officers were facing a large, violent, and angry individual who was unwilling to be brought under control by the officers. Mr. Davenport had already knocked Officer Causey to the ground and was delivering blows in rapid succession to Officer Pugh's head. Indeed, Mr. Davenport was more dangerous than the defendant in *Colston* because Mr. Davenport never broke off his attack and there was no indication that he would. Even though when looking in retrospect "in the peace of a judge's chambers" it may seem that serious physical injury or death was not imminent, we cannot say that a reasonable officer on the scene facing such a suspect and having to decide very quickly could not have reasonably believed it was. *See Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 1028, 1033 (2d Cir. 1973)).

Our analysis is not changed by the assumed fact that, when viewing the facts most favorably to the plaintiffs, the off-camera blow did not occur and Officer Causey did not see the whites of Officer Pugh's eyes. While both would bolster Officer Causey's decision to use deadly force, the circumstances provided sufficient cause for deadly force absent these two facts. Even though Officer Causey did cite the fact that Officer Pugh's eyes rolled to their whites as a reason he decided to use deadly force, it was still reasonable for him to shoot Mr. Davenport under the circumstances. Again, as detailed above, Mr. Davenport was a large, violent, and angry man who was unwilling to comply with direction from the police and who had attacked two police officers in quick succession, with only four seconds having elapsed while he delivered at least five blows to the two officers. In those four seconds Mr. Davenport had struck Officer Causey at least twice and knocked him to the ground, and had struck Officer Pugh in the head three times, strikes which Officer Causey had observed. At the time he was shot, Mr. Davenport was preparing to strike Officer Pugh on the top of his head with his fist for a fourth time. As conceded by the plaintiffs, Mr. Davenport had given no indication that he planned on retreating, and, if the fight were scored on points, Mr. Davenport was winning. While Officer Causey may have been mistaken in deciding that deadly force was required and that there was no time to warn Mr. Davenport, we cannot say that, given the rapidly evolving circumstances, his decision was unreasonable. *Id.*

## II. City of Crossville's Appeal

### A. Jurisdiction

We normally do not have jurisdiction to consider an interlocutory appeal regarding a district court's denial of summary judgment because such a denial does not constitute a "final decision." 28 U.S.C. § 1291 (2006). While there is an exception for denials of summary judgment to officers in their individual capacities claiming qualified immunity, *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1949), there is no exception for municipalities denied summary judgment because they are not provided qualified immunity, *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42-43 (1995) (unanimous). We do, however, have pendent jurisdiction to review the city's claim.

"Pendent appellate jurisdiction refers to the exercise of jurisdiction over issues that ordinarily may not be reviewed on interlocutory appeal, but, may be reviewed on interlocutory appeal if those issues are inextricably intertwined with matters over which the appellate court properly and independently has jurisdiction." *Summers v. Lewis*, 368 F.3d 881, 889 (6th Cir. 2004) (citations omitted). We have previously held that where we evaluate whether a constitutional violation has occurred due to a proper appeal from a denial of qualified immunity, we can also evaluate the constitutional question in regard to the city because the question is the same, and therefore the appeal is "inextricably intertwined." *See Meals v. City of Memphis*, 493 F.3d 720, 727 (6th Cir. 2007).

### B. Merits

Establishing a constitutional violation in the particular circumstance is required to maintain an action against a city for inadequate training of its police officers. *Mattox v. City of Forest Park*, 183 F.3d 515, 523 ("If the plaintiffs have failed to state a claim for violation of a constitutional right at all, then the City of Forest Park cannot be held liable for violating that right any more than the individual defendants can."). When evaluating Officer Causey's appeal, we determined that a constitutional violation did not occur. The city, therefore, is also entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, the district court's denial of summary judgment to Officer Causey and the City of Crossville is REVERSED, and the case is REMANDED to the district court with instructions to enter summary judgment for the defendants.