# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 19, 2017

Lyle W. Cayce
Clerk

No. 16-10488

JEFF HATCHER, Individually and as the lawful heirs of the Estate of
Jordan Ross Hatcher, deceased; MICHELLE HANSFORD, Individually and
as the lawful heirs of the Estate of Jordan Ross Hatcher, deceased,

Plaintiffs–Appellees,

v.

WESLEY BEMENT,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:14-CV-432

Before KING, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:*

Jeff Hatcher and Michelle Hansford, in their individual and
representative capacities as heirs, and to whom we will refer as Hatcher's
Estate, sued Grand Prairie Police Department (GPPD) Officer Wesley Bement
pursuant to 42 U.S.C. § 1983, alleging that Bement exercised excessive force
in violation of the Fourth Amendment by fatally shooting their son, Jordan

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 16-10488

Hatcher.  Bement asserted qualified immunity and moved for summary judgment.  The district court denied the motion, and Bement brought this interlocutory appeal.  We affirm.

**I**

On January 24, 2013, Bement received a report that an unidentified male, potentially armed with a knife and later identified as Hatcher, had committed the crime of shoplifting by stealing a video-game remote from a store and, after struggling with a GPPD police officer, had fled on foot.  Bement spotted Hatcher on a highway median, but Hatcher was able to evade Bement and continued to flee.  Bement then drove to nearby Tarrant County College, where he believed Hatcher could be found.   Bement was successful in locating Hatcher and ordered him to stop moving and to get on the ground.  Hatcher did not obey Bement's commands and, instead, ran from Bement toward a parking lot of the college, past a Tarrant County College Police Department (TCCPD) officer who was pointing a pistol at Hatcher and ordering him to stop.  In the parking lot, five TCCPD officers approached Hatcher, who stopped running but, according to Bement, "appeared to act very aggressive."

Bement approached the TCCPD officers and Hatcher, who was about six feet tall and weighed 200 to 220 pounds, with his Conductive Energy Weapon, commonly known as a Taser, drawn.  Hatcher turned from the TCCPD officers to face the approaching Bement, who fired a Taser cartridge consisting of two barbs carrying an electrical charge.  One barb attached to Hatcher, but the other likely did not.  The Taser did not incapacitate Hatcher.

Bement then approached Hatcher and used his Taser to deliver a close-quarters drive stun to Hatcher's arm.  Hatcher knocked the Taser away from his arm and turned his back to Bement, at which point Bement put his right arm around Hatcher's neck and delivered a drive stun to Hatcher's back.  Despite Bement's hold, Hatcher was able to spin in Bement's arms until they

2

faced each other.  As Bement and Hatcher continued to struggle in this position, TCCPD Officer Denson and another TCCPD officer sprayed Hatcher in the face with pepper spray, some of which Bement claims burned Bement's skin and eyes.  The parties' versions of the events after this point diverge.

Bement claims that the pepper spray had no effect on Hatcher.  During the struggle, Bement maintains that Hatcher ripped the Taser from Bement's hands and then began moving toward Denson, who was retreating, with the Taser "in his hand in a way that he could 'fire' or deploy the Taser."  Bement states that he then drew his pistol and ordered Hatcher to stop.  Bement equivocates on what happened next, initially asserting that Hatcher started attacking Denson but omitting this assertion in a later affidavit.  Regardless, Bement claims that Hatcher then turned toward Bement with "a crazed look in his eyes" and either pointed the Taser at Bement or appeared as though he would use the Taser on Bement.  Fearing that the Taser would ignite the pepper spray on his skin, Bement shot Hatcher three or four times, fatally wounding him.

Hatcher's Estate's depiction of the events relies on a voluntary witness statement from TCCPD Officer Denson, whom Bement claims Hatcher approached with the Taser.  Denson attests that after she and another TCCPD officer sprayed Hatcher with pepper spray, Hatcher "then tried to walk slowly away from all of us."  Denson stated that Hatcher "appeared like he was squinting and had his head down and was attempting to wipe away the residue from his eyes."  She also stated that she "was about to spray [Hatcher] again when all the sudden, without any warning, or notice, [she] heard a gunshot come from [her] right and saw the suspect get hit in his upper left side."  She was close enough that she "could see the blood coming out of the wound in his chest."  This event "startled [her] so much that [she] started backing up."  As she backed up, she "heard two more shots being fired."  She "was so close to

the suspect . . . [that she] worried about getting shot" and "backed up so quickly that [she] lost [her] balance and fell backwards to the ground."

Hatcher's Estate also relies on two eye-witness statements given to police investigators following the incident. In both statements, the eye-witnesses note that they did not see a weapon in Hatcher's hand at any time. One of the eye-witness confirms that he did not notice Hatcher attempt to "go after any weapons" while Bement and Hatcher struggled. The other eye-witnesses corroborates Denson's account, stating that Hatcher was "bent over" immediately before the eye-witness heard gunfire.

The magistrate judge assigned for pretrial management considered the eye-witness statements inadmissible hearsay and recommended that the district judge exclude the statements. Nevertheless, the magistrate judge determined that, based primarily on Denson's statement, Hatcher's Estate had presented a genuine issue of material fact and recommended that the district judge deny Bement's summary judgment motion. Specifically, the magistrate judge concluded that

> a reasonable officer was on notice that it is objectively unreasonable to use deadly force against an arrestee who is not armed but is, at the time deadly force is employed, instead reacting to being pepper sprayed by trying to walk slowly away from all of the officers, squinting with his head down, and attempting to wipe away the residue from his eyes.

"After making an independent review of the pleadings, files, and records" in the case, the district court accepted most of the magistrate judge's recommendations, but rejected the recommendation to exclude the eye-witness statements. The district court noted, however, that the inclusion of these statements "merely strengthen the Magistrate Judge's conclusion," and, accordingly, the district court denied Bement's motion for summary judgment. Bement appealed.

4

No. 16-10488

## II

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[1] Although qualified immunity is "nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised."[2] When addressing a qualified immunity claim on summary judgment, the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor."[3]

In reviewing a denial of qualified immunity on summary judgment, we may not question whether a factual dispute is genuine—i.e., whether "the evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party."[4] Instead, we must confine our inquiry to whether the factual dispute is material, meaning that we must affirm the denial if "resolution of the issues might affect the outcome of the suit under governing law."[5]

We typically conduct this review de novo,[6] but Hatcher's Estate contends that "Bement failed to file specific written objections to the Magistrate Judge's findings that the issues of fact Hatcher presented were material" and that, as a result, this court must review the district court's decision for plain error. Hatcher's Estate's construction of the law is correct but incomplete, for "when the district court engages in an independent evaluation of the record," we review a summary judgment decision de novo regardless of whether the

---

[1] *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 275-76 (5th Cir. 2014).

[2] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

[3] *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (per curiam) (internal quotation marks omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[4] *Colston v. Barnhart*, 146 F.3d 282, 284 (5th Cir. 1998).

[5] *Id.*

[6] *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).

appealing party timely objected.[7]  The district court explicitly stated that it had made "an independent review of the pleadings, files, and records in this case," and, accordingly, even if Bement did not file specific written objections, we review the district court's decision de novo.

## III

Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly" against "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[8]  To that end, it "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[9]

We will not hold that a right is clearly established unless it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[10]  We resolve whether a right is clearly established "in light of the specific context of the case, not as a broad general proposition."[11]  Although a right may be clearly established without "a case directly on point, . . . existing precedent must have placed the statutory or

---

[7] *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005); *accord Meister v. Tex. Adjutant Gen.'s Dep't*, 233 F.3d 332, 336 (5th Cir. 2000) ("[W]hen the district court has engaged in *de novo* review, we do not require these specific objections to the magistrate judge's report as a prerequisite to full review."); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) ("[W]e ordinarily will not hold that a point reviewed *de novo* by the district judge was not objected to before it was so reviewed by that judge.").

[8] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[9] *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Pearson*, 555 U.S. at 231).

[10] *Id.* (internal quotation marks omitted) (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)).

[11] *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (internal quotation marks omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *accord Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) ("Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case.").

constitutional question beyond debate."[12]    This "demanding standard"[13] protects "all but the plainly incompetent or those who knowingly violate the law"[14] "from the sometimes 'hazy border between excessive and acceptable force.'"[15]

An officer's use of deadly force "is a seizure subject to the reasonableness requirement of the Fourth Amendment."[16]  To establish that an officer's use of force contravened the Fourth Amendment, "a plaintiff must show '(1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'"[17]  To assess whether an officer's use of force was clearly unreasonable, we typically "consider 'the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether [the suspect] [was] actively resisting arrest or attempting to evade arrest by flight.'"[18]  However, when an officer uses deadly force, the sole inquiry is whether "the officer ha[d] probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or to others"[19] at the moment the officer used deadly force; if not, the use of "deadly force violates the Fourth Amendment."[20]  When making this determination, we consider the

---

[12] *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).

[13] *Vincent*, 805 F.3d at 547.

[14] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

[15] *Saucier*, 533 U.S. at 206 (quoting *Priester v. Riviera Beach*, 208 F.3d 919, 926-27 (11th Cir. 2000)).

[16] *Tennessee v. Garner*, 471 U.S. 1, 7 (1985).

[17] *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) (quoting *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009)).

[18] *Hogan v. Cunningham*, 722 F.3d 725, 734 (5th Cir. 2013) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

[19] *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 488, 493 (5th Cir. 2001) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).

[20] *Id.*

totality of the circumstances as perceived by "a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[21]

Although it is clearly established that deadly force is permissible only if the officer has probable cause to believe that the suspect poses a threat of serious physical harm, we cannot rely on this "'general' test,"[22] detached from factual application, to hold that an officer's conduct was clearly established as unlawful in the situation the officer confronted except "in an obvious case."[23] Instead, this general test must be tethered to precedent containing facts "analogous or near-analogous" to the facts in the case under consideration to suffice as clearly established law.[24] We must nevertheless remain cognizant that "[t]he central concept [of qualified immunity] is that of fair warning: [t]he law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."[25]

In this circuit, Fourth Amendment cases clearly establish—and did so by 2013—that when a suspect is on foot, an officer may shoot the suspect only if a reasonable officer could reasonably perceive that the suspect posed an immediate and significant threat to the officer or to others. Our application of this clearly established law in analogous or near-analogous cases provided fair warning to Bement that it would violate the Fourth Amendment to shoot a

---

[21] *Graham*, 490 U.S. at 396.

[22] *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).

[23] *Brosseau*, 543 U.S. at 199.

[24] *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).

[25] *Flores v. City of Palacios*, 381 F.3d 391, 400 (5th Cir. 2004) (internal quotation marks omitted) (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004)); *accord Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.").

suspect that, at the time of the shooting, is bent over, squinting, wiping pepper spray from his eyes, and slowly walking away from all the officers.    In *Meadours v. Ermel*, this court refused to grant summary judgment to an officer asserting qualified immunity because it was material whether the six-foot-two-inch, 203 pound suspect—who was armed with a ten-and-three-quarter-inch screwdriver,[26] experiencing "a mental episode,"[27] and refusing to comply with orders to drop the screwdriver[28]—was charging toward an officer or standing "still atop [a] doghouse, posing no imminent threat" when shot.[29]  In *Bazan ex rel. Bazan v. Hidalgo Cty.*, we held that qualified immunity was not warranted on summary judgment in a case in which an officer shot a suspect after the suspect, an intoxicated motorist, resisted arrest and fled from the officer on foot because it was material whether the suspect attacked the officer at the time of the shooting.[30]

Conversely, in other cases, this court has held that it was not a violation of a clearly established Fourth Amendment right for an officer to shoot a suspect while the suspect was on foot when it was reasonable for the officer to perceive that the suspect posed a serious and immediate threat when the officer fired.    The four cases upon which Bement mistakenly relies are exemplary: *Davenport v. Causey*,[31] *Mendez v. Poitevent*,[32] *Salazar–Limon v. City of Houston*,[33] and *Colston v. Barnhart*.[34]  In *Davenport*, the suspect was actively striking an officer when a second officer fired;[35] in *Mendez*, the suspect

---

[26] 483 F.3d 417, 420 (5th Cir. 2007).

[27] *Id.* at 419.

[28] *Id.* at 420.

[29] *Id.* at 423-24.

[30] 246 F.3d 481, 483-84, 486, 492-93 (5th Cir. 2001).

[31] 521 F.3d 544 (6th Cir. 2008).

[32] 823 F.3d 326 (5th Cir. 2016).

[33] 826 F.3d 272 (5th Cir. 2016), *petition for cert. filed* (Oct. 13, 2016) (No. 16-515).

[34] 130 F.3d 96 (5th Cir. 1997).

[35] *Davenport*, 521 F.3d at 548-49, 553.

had concussed the sole officer on the scene, leaving the officer nearly unconscious and alone with fading vision;[36] in *Salazar–Limon*, the suspect reached toward his waistband, which the officer believed hid a concealed weapon;[37] and in *Colston*, the suspect was moving toward a car containing a shotgun and was "in a position to inflict serious harm on the officers with or without a weapon."[38]

These cases are consistent with other Supreme Court and Fifth Circuit precedent.  For example, in *White v. Pauly*, the Supreme Court determined that an officer did not violate a clearly established right when the officer shot a suspect who, after shouting "we have guns," walked out of his house and pointed a pistol in the direction of the officer.[39]  Similarly, in *Manis v. Lawson*, we held that an officer acted reasonably when the officer shot a suspect after the suspect reached under the seat of a vehicle and "appeared to retrieve an object that [the officer] reasonably believed to be a weapon."[40]  We held the same in *Ramirez v. Knoulton*, a case in which the officer shot the suspect, who was armed with a pistol, when the suspect "brought his hands together in what . . . could reasonably be interpreted as a threatening gesture, as if to grip the handgun with both hands in preparation to aim it at the officers."[41]  In *Mace v. City of Palestine*, we determined that an officer acted reasonably when the officer shot the suspect after the suspect, "an intoxicated, violent and uncooperative individual who was wielding a sword," moved toward the officers

---

[36] *Mendez*, 823 F.3d at 330, 332 ("In that moment, it was reasonable for [the officer]—concussed, disoriented, weakened, suffering a partial loss of vision, and fearing that he might lose consciousness in the presence of a violent suspected felon—to believe that [the suspect] might attempt to take advantage of his weakened or unconscious state to overpower and seriously injure or kill him.").

[37] *Salazar–Limon*, 826 F.3d at 278-79.

[38] *Colston*, 130 F.3d at 98, 99-100.

[39] 580 U.S. ___, No. 16-67, 2017 WL 69170, *2 (Jan. 9, 2017).

[40] 585 F.3d 839, 845 (5th Cir. 2009).

[41] 542 F.3d 124, 131 (5th Cir. 2008).

while making "punching motions with his sword" and "raising his sword toward the officers."[42]

Hatcher's Estate is not "alleging violation of [an] extremely abstract right[]."[43] As illuminated above, this case does not present a novel situation in which we cannot "identify a case where an officer acting under similar circumstances as [Bement] was held to have violated the Fourth Amendment."[44] Assuming the facts in the light most favorable to Hatcher's Estate, as we must in reviewing a summary judgment ruling, Hatcher posed an objectively lesser threat than the suspect in *Meadours*, who held a weapon when the officer fired. This court rejected the officer's claim of qualified immunity because there was a genuine, material dispute regarding whether the suspect nevertheless posed a threat at the time of the shooting. A similar material factual dispute exists here. If Hatcher was bent over, squinting, wiping pepper spray from his eyes, and slowly walking away from all the officers, then it would be unreasonable for Bement to believe that he posed a threat. Accordingly, Hatcher's Estate has presented a genuine dispute of material fact, precluding summary judgment.

\*     \*     \*

For the foregoing reasons, we AFFIRM the decision of the district court and REMAND for further proceedings consistent with this opinion.

---

[42] 333 F.3d 621, 624-25 (5th Cir. 2003).

[43] *White*, 2017 WL 69170, at \*4 (internal quotations omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

[44] *Id.* at \*5.