NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0277n.06

Case No. 21-1750

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Jul 13, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| YUSEF LATEEF PHILLIPS, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| ANDREW HINDS, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: GILMAN, GRIFFIN, and THAPAR, Circuit Judges.

PER CURIAM. An officer may constitutionally shoot a suspect when the officer has probable cause to believe that the suspect poses an immediate threat of serious physical harm. Thus, this case boils down to one question: Was Deputy Andrew Hinds justified in shooting Yusef Phillips? The answer depends on whose version of events you believe. But we can't resolve factual disputes on an interlocutory appeal like this one. Rather, we must accept the plaintiff's version of the facts and decide only pure legal questions. *See Barry v. O'Grady*, 895 F.3d 440, 443 (6th Cir. 2018).

Phillips tells the following story: He and his brother were members of a drug-trafficking ring. One morning, the brothers picked up a large cocaine shipment and transported it to their stash house. Unbeknownst to them, a tactical team was waiting to arrest them. The team knew of the brothers' criminal history and expected them to be armed and to resist arrest. As the brothers walked out of the stash house, Deputy Hinds approached them from behind without announcing

himself.  Phillips heard a "commotion," so he turned to see what was happening.  Appellee's Br 5.  That's when Hinds shot him.

Hinds argues that he announced himself and ordered the brothers to "get on the ground."  R. 107-1, Pg. ID 555–56.  According to Hinds, Phillips failed to comply and made a furtive movement suggesting that he was armed.  But Phillips disputes these assertions.  So we must disregard them for purposes of this appeal.

Even so, Hinds claims that he is entitled to qualified immunity under Phillips's telling of the story.  Specifically, he argues that it was not clearly established that shooting Phillips violated the Fourth Amendment.  A violation is clearly established when "every reasonable official would have understood" the unconstitutionality of the conduct.  *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (per curiam) (citation omitted).  And, as mentioned, an officer can use deadly force only if a suspect poses an immediate threat of serious physical harm.  *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).  So did Phillips pose such a threat?

Under Phillips's story, the answer is no.  As Phillips tells it, he simply walked out of the stash house and turned to see the commotion.  Although Hinds points to Phillips's criminal history and the serious nature of drug trafficking, these facts alone don't give an officer license to shoot.  The officer needs some additional fact that indicates an immediate threat of serious physical harm.  And turning toward the officer, without more, doesn't suffice.  Indeed, that's the natural response when someone hears a commotion behind him.  *Cf. Sample v. Bailey*, 409 F.3d 689, 697 (6th Cir. 2005) (denying qualified immunity when the use of deadly force was based on nothing more than the suspect's natural response to an officer's command).  Thus, this case is materially indistinguishable from *Floyd v. City of Detroit*, 518 F.3d 398, 402–03, 409 (6th Cir. 2008) (denying qualified immunity when the officer shot an unarmed suspect without warning a "split

second" after seeing him). Given this precedent, qualified immunity doesn't protect Hinds at this juncture.

Sure, there are several disputed facts that could alter the analysis. For example, if Phillips made a furtive movement or disobeyed Hinds's command to "get on the ground." Also relevant is the positioning of Phillips's hands, whether he was holding anything, and whether Hinds had a clear view. Any of these facts—coupled with Phillips's criminal history and the serious nature of drug trafficking—might be enough to justify deadly force. But they are all disputed. And the video, which lacks audio, doesn't shed light on the matter. So these are questions for a jury. A jury may ultimately grant Hinds qualified immunity. But under the facts as Phillips presents them, we may not.

To be clear, our decision does not restrain officers from appropriately employing deadly force to protect our communities. Time and again, we have reiterated that an officer may shoot a suspect if the officer reasonably concludes that the suspect poses an immediate threat of serious physical injury. *See, e.g.*, *Jordan v. Howard*, 987 F.3d 537, 543–44 (6th Cir. 2021); *Reich v. City of Elizabethtown*, 945 F.3d 968, 979–82 (6th Cir. 2019); *Jacobs v. Alam*, 915 F.3d 1028, 1040 (6th Cir. 2019); *Mullins v. Cyranek*, 805 F.3d 760, 765–69 (6th Cir. 2015); *Krause v. Jones*, 765 F.3d 675, 680 (6th Cir. 2014); *Chappell v. City of Cleveland*, 585 F.3d 901, 909–11 (6th Cir. 2009); *Davenport v. Causey*, 521 F.3d 544, 551–54 (6th Cir. 2008). But the suspect must indeed pose an immediate threat. And here, at least under Phillips's telling of events, Phillips did not.

We affirm.