NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 09a0691n.06

No. 08-4238

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Oct 20, 2009

LEONARD GREEN, Clerk

PAMELA HANSON,
　　　*Plaintiff, Appellant*

On Appeal from the United States District
Court for the Northern District of Ohio

v.

CITY OF FAIRVIEW PARK, OHIO, ET AL.,
　　　*Defendant, Appellee*

_____/

**BEFORE: BATCHELDER, Chief Judge, KENNEDY and McKEAGUE, Circuit Judges.**

**KENNEDY, Circuit Judge.** Officer John Brewer, a police officer for the city of Fairview Park, Ohio, appeals the district court's denial of his motion for summary judgment on the grounds of qualified immunity. Officer Brewer was dispatched to the Hanson home based on information that the male householder was "out of control" and "trashing the [Hanson's] house." In the course of investigating what was going on at the Hanson home, Officer Brewer shot Scott Hanson three times, killing him. Scott's wife, Pamela Hanson, brought this action against Officer Brewer pursuant to 28 U.S.C. § 1983, claiming that defendant violated her husband's Fourth Amendment right to be free from excessive force. Defendant Brewer sought summary judgment, claiming that on the undisputed facts, he was entitled to qualified immunity for his use of deadly force. The district court held that there were material issues of fact as to what occurred that night and denied the motion for summary judgment. Because we find that the district court, in denying defendant's motion, properly

determined that genuine issues of material fact remained as to the events that led to Scott Hanson's

death, we DISMISS the present appeal for lack of jurisdiction.

## BACKGROUND

This case involves conflicting accounts of an incident that began with defendant Officer

Brewer responding to a 911 call and resulted in Officer Brewer shooting and killing the husband of

plaintiff Pamela Hanson. Relevant to this appeal are the events that occurred immediately prior to

Scott Hanson's death. At 6:15 on the evening of the shooting, Officer Brewer responded to a radio

dispatch stating that there was " a male out of control trashing the house" at Hanson's address. Upon

arriving at the Hansons' home, Officer Brewer testified that he saw a PT Cruiser "smashed into the

house" and that a car had been driven through the garage door. Hearing noise coming from the

garage, he walked toward the garage and found Mr. Hanson "walking back and forth like he's

agitated," and, with two golf clubs, "beating something like a workbench." The officer testified that

he then called out to Mr. Hanson, and "as soon as he sees me he starts to come directly towards me."

Officer Brewer testified that, though he ordered Mr. Hanson repeatedly to stop, Hanson "charged"

toward him, walking "briskly" with two golf clubs in his hands. Officer Brewer testified that Hanson

then raised the clubs above his head and said "I'm coming for you." Officer Brewer retreated toward

the street. He testified that, feeling trapped by the crashed PT Cruiser and unable to safely retreat

further, he fired his weapon three times, killing Mr. Hanson.

The district court found that this testimony differed materially from the testimony of Shirley

Cooney, the Hansons' neighbor who, along with her husband, Marty Cooney, witnessed the incident

from her home across the street. In a statement Shirley Cooney provided shortly following the incident, she stated that she did not see whether or not Hanson was armed with golf clubs when he approached Brewer. At her later deposition, however, she testified that she did not see anything in Hanson's hands when he came into her view as he retreated toward the street. While she agreed in that deposition that Mr. Hanson had approached Officer Brewer "briskly," she stated that Mr. Hanson's "hands were at his side" as he advanced toward Officer Brewer. Her husband Marty Cooney, both in his statement that night and in his deposition, indicated he was unable to see anything in Scott's hands, explaining that "it is dark in that area because of the trees."

The district court found that the discrepancy as to whether or not Mr. Hanson used golf clubs in threatening Officer Brewer was relevant in analyzing the reasonableness of Officer Brewer's use of deadly force. In addition, the district court found that "controlling issues" of material fact remained as to whether Mr. Hanson was walking toward Officer Brewer with the golf clubs raised at the time he was shot and whether the officer's opportunity to retreat was obstructed by the PT Cruiser. In light of these remaining issues of material fact, the district court denied summary judgment and qualified immunity to defendant.

On appeal, defendant argues that this Court has jurisdiction of this interlocutory appeal pursuant to the "collateral order doctrine" found in 28 U.S.C. § 1292. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Pursuant to this doctrine, he argues, our Court has jurisdiction over interlocutory appeals where the denial of summary judgment was based on qualified immunity. *Id.* On the merits, defendant first argues that the district court improperly imposed an "implicit duty to retreat" on Officer Brewer in considering whether his use of force was unreasonable and thus in

3

violation of the Fourth Amendment. Second, defendant argues that the district court erred as a matter of law when it considered witness Shirley Cooney's deposition testimony in concluding that a material issue of fact indeed remained as to whether or not Mr. Hanson was actually using golf clubs to threaten Officer Brewer at the time Mr. Hanson was shot. The clubs were found near his body after the shooting.

In response, plaintiff argues that because the district court's denial of summary judgment was based on the existence of genuine issues of material fact rather than on purely legal issues, our Court lacks jurisdiction over this interlocutory appeal. *See Johnson v. Jones*, 515 U.S. 304 (1995). In addition, plaintiff argues that even if our Court does have jurisdiction, we should affirm the district court's denial of summary judgment because material issues of fact remain as to the incident that resulted in Hanson's death.

## ANALYSIS

The Supreme Court has held that where an order denying qualified immunity turns on a pure question of law, it may be appealed immediately. *Mitchell*, 472 U.S. at 511. The Court has also held, however, that where the order turns on the existence of material issues of fact, it is not immediately appealable. *Johnson*, 515 U.S. at 319. In *Johnson,* a district court denied several police officers' motion for summary judgment on a plaintiff's § 1983 claim alleging excessive force. *Id.* The basis for the denial was the determination that material issues of fact existed as to the officers' roles in the alleged beating. *Id.* On appeal, the Supreme Court held that the Seventh Circuit's dismissal of the appeal for lack of jurisdiction was proper because "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as

that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial."

*Id.* at 319.

In this case, the district court's denial of the summary judgment motion filed by defendant

claiming qualified immunity was clearly based on a determination that material factual disputes

remained. Regarding the affirmative defense of qualified immunity asserted by defendant, the court

stated:

> In this case, the Court is unable to grant qualified immunity as to Officer Brewer because it is not clear whether his conduct violated a constitutional right. Whether or not his conduct passes constitutional muster hinges primarily on whether Mr. Hanson was wielding golf clubs at the time of the shooting, advancing toward Officer Brewer, and whether Officer Brewer was penned in by the PT Cruiser; facts that remain in dispute. A jury must, therefore, make a factual determination before the Court decides to afford Officer Brewer qualified immunity.

July 16, 2008 Opinion and Order at 10. As to the motion for summary judgment, the court stated:

> In this case, whether Mr. Hanson had anything in his hands, whether Mr. Hanson was advancing toward Officer Brewer when he was shot, and whether Officer Brewer was penned in by the PT Cruiser are controlling issues, and the parties' differing versions of the events creates genuine issues of material fact. These are factual questions for a jury to decide. It is impossible for the Court to determine whether Officer Brewer deprived Mr. Hanson of a federally protected right by the use of excessive force without first making a determination as to whether Officer Brewer's conduct was reasonable.

July 16, 2008 Opinion and Order at 8. According to the district court, the issues that remain are

factual and must be decided at trial. In denying both summary judgment and qualified immunity to

Officer Brewer, the district court made clear that its determination on both issues was based on the

existence of remaining disputed facts.

On appeal, defendant raises two issues. In an attempt to create a jurisdictional basis for his claims, defendant advances his argument in the form of two purely legal issues rather than acknowledging the factual issues that remain. First, he raises the issue of whether a police officer has a duty to retreat when attacked with a weapon. Second, he raises the issue of whether a witness is competent to offer testimony where that individual lacked personal knowledge of the events He raises this issue as to the deposition testimony of Shirley Cooney.

First, defendant incorrectly asserts that the district court erroneously held that there was a question of fact as to whether the police officer could safely have retreated further. Defendant concedes the district court did not expressly discuss whether Officer Brewer had a duty to retreat and acknowledges that an officer is not required to retreat before a display of force by the adversary. Instead, the court concluded there was an issue of fact as to whether defendant was penned in by the parked PT Cruiser which had been driven into the side of the house since its location was one of the reasons given by defendant as to why he used deadly force. The court then continued with a discussion of whether Brewer's conduct in shooting the decedent was reasonable.

Second, defendant's argument that the district court erred in considering Shirley Cooney's testimony is without merit. Defendant argues that, because Cooney wrote in her police statement that she "did not see if Scott had a weapon," she lacked personal knowledge of the incident and her later testimony should be excluded as hearsay. Defendant further argues that, because her later deposition testimony contradicted her police statement, it should be excluded under *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). In *Cleveland*, the Supreme Court stated that "a *party* cannot create a genuine issue of fact sufficient to survive summary judgment simply by

contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Id* (emphasis added). This rule, however, applies only to parties, not to non-party witnesses like Shirley Cooney. We have never held that a non-party witness' testimony is inadmissible where it conflicts with his or her prior statements and counsel has cited no authority to support that proposition. If defendant is concerned with the credibility of Mrs. Cooney as a witness, he will have the opportunity to cross examine her at trial. This admissible deposition testimony rebuts defendant's argument that Mrs. Cooney had no personal knowledge of the incident. Accordingly, the district court properly considered the testimony of Mrs. Cooney in determining whether genuine issues of material fact remained as to the reasonableness of Officer Brewer's conduct.

The dissent raises a third argument that it believes would support jurisdiction and justify reversal: if we resolve certain factual disputes in favor of the plaintiff and assume that the decedent was unarmed, *Johnson* poses no barrier to our consideration of the case. We do not agree. To begin, this argument was not raised by the parties nor presented to the district court. "[T]he general rule is that this court will not consider issues not raised in the district court." *Wright v. Holbrook*, 794 F.2d 1152, 1157 (6th Cir. 1986). As we've explained: "Two main policies justify this general rule. First, the rule eases appellate review by having the district court first consider the issue. Second, the rule ensures fairness to litigants by preventing surprise issues from appearing on appeal." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) (internal citations and quotations omitted). We

7

"rarely" consider issues that were not raised below, *id.* at 552, and will do so only in "exceptional

cases," *Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 545 (6th Cir. 1996).

The fairness concerns underlying this rule are fully implicated in this case because the

plaintiff did not have an opportunity to address the dissent's concerns in the district court or in this

Court. Had the issue been raised before the district court, perhaps the plaintiff could have presented

additional facts that render qualified immunity inappropriate, even under the dissent's analysis of

the law. Or perhaps the plaintiff could have obtained additional time to garner such facts. *See* Fed.

R. Civ. P. 56(f). In any event, qualified immunity – like the plethora of other issues that begin in the

district court – should first be decided by the district court before we become involved.

These concerns are doubly amplified where, as here, neither party has even advanced the

argument for our consideration. "The premise of our adversarial system is that appellate courts . .

. essentially [act] as arbiters of legal questions presented and argued by the parties before them."

*Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.). It would be improper to reverse

the district court and end the plaintiff's case without the benefit of a lower court record *or* any

briefing on the subject. *See Citizens Coal Council v. EPA*, 447 F.3d 879, 905 (6th Cir. 2006) (en

banc) ("In short, the panel majority erred in ruling on grounds not raised by the parties. Because it

was improper for the panel majority to reach issues not briefed by the parties, . . . we decline to reach

those issues here."); *see also Lee v. Myers*, 92 F.3d 1185, 1996 WL 444460 (6th Cir. Aug. 6, 1996)

(holding that it is improper for the district court to raise sua sponte a qualified immunity defense).

Pursuing the dissent's reasoning would take us into an inquiry indistinguishable from that

forbidden by *Johnson*. The dissent argues that the issue is one of law because we can apply the

8

qualified immunity analysis to the facts viewed in the light most favorable to the plaintiff. But this is not the analysis of "neat abstract issues of law," *see Johnson*, 515 U.S. at 316 (internal quotations omitted), that the dissent believes it to be. We first must decide *which* facts we will resolve in favor of the plaintiff. The dissent suggests we can look to the "plaintiff's version" of events, but because the plaintiff was responding to other arguments in her briefing, it is not clear how we will determine what exactly the "plaintiff's version" is. Without aid from the parties, resolution of this appeal will "require reading a vast pretrial record, with numerous conflicting affidavits, depositions, and other discovery materials." *See id.* Parsing through such a record is the sort of exercise that "trial judges, not appellate judges, confront almost daily," making it appropriate for resolution at the place where this argument should have been raised: the district court. *See id.* In fact, inquiry into "whether or not the pretrial record sets forth a 'genuine' issue of fact for trial" is precisely the inquiry forbidden by *Johnson*. *Id.* at 317. The concern that "review of such questions on interlocutory appeal 'can consume inordinate amounts of appellate time' by requiring the appeals court to comb a voluminous pretrial record to assess plaintiffs' evidence," *Farm Labor Organizing Committee v. Ohio State Highway Patrol*, 308 F.3d 523, 537 (6th Cir. 2002) (quoting *Johnson*, 515 U.S. at 316), holds special weight in this case, where we must start from scratch and proceed without illumination from the parties.

The fact-bound nature of an excessive force claim makes our inquiry even more problematic. "Evaluating the reasonableness of a use of force 'requires careful attention to the facts and circumstances of each particular case," *Vance v. Wade*, 546 F.3d 774, 782 (6th Cir. 2008) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)), and requires us to examine "the totality of

9

circumstances," *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007). For qualified immunity, we must decide whether the force employed was "objectively unreasonable such that it could not have been based on a reasonable mistake of law." *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009). The dissent resolves a single issue in favor of the plaintiff: whether the decedent was holding the golf clubs when he was shot. But there exist several circumstances that may or may not be relevant to our inquiry. What was the distance the decedent traveled after he lowered the clubs? How close was the decedent to the officer? What was the placement of the vehicles? Did he slow down after being ordered to do so? Perhaps there is no evidence to support a plaintiff's verdict on some of these issues. But we cannot make this inquiry on interlocutory appeal without violating the clear holding of *Johnson*. We therefore decline to reach the difficult question the dissent reaches: whether a police officer can reasonably use deadly force against an unarmed man under the specific factual circumstances the dissent would use.

The determination of whether defendant's conduct was reasonable cannot be made while material issues of facts as to that evening's events remain. The officer justified the use of deadly force under a defined version of facts; specifically, he stated that he was approached by a man wielding raised golf clubs. While we agree that Officer Brewer's conduct was reasonable if the deceased was threatening Officer Brewer with raised golf clubs, if the deceased was threatening him but had lowered the clubs, the justification given by the officer may be no longer available. The reasonableness of defendant's conduct would then be a different question, and we do not have defendant's testimony to support the assertion that, given that factual scenario, shooting the decedent

would be a reasonable response.  If the deceased had no weapon in his hand, the immediate threat would be less and some lesser use of force might have been reasonable.

Because the denial of summary judgment on the basis of qualified immunity in this case resulted from the existence of factual issues for trial rather than purely legal issues, we find that, pursuant to *Johnson*, we are precluded from taking jurisdiction over this matter.  515 U.S. at 319.

## CONCLUSION

For the foregoing reasons, we DISMISS the present appeal for lack of jurisdiction.

No. 08-4238
*Hanson v. City of Fairview Park, et al.*

**ALICE M. BATCHELDER, Chief Judge, concurring.** The district court considered the evidence and argument properly before it, found material issues of fact in dispute, identified those disputed issues, and denied the officer's claim of qualified immunity on that basis. "This kind of order . . . is not appealable." *Johnson v. Jones*, 515 U.S. 304, 313 (1995).

> For one thing, the issue here at stake — the existence, or nonexistence, of a triable issue of fact — is the kind of issue that trial judges, not appellate judges, confront almost daily. . . .
> For another thing, questions about whether or not a record demonstrates a 'genuine' issue of fact for trial, if appealable, can consume inordinate amounts of appellate time. . . .
> For a third thing, the close connection between this kind of issue and the factual matter that will likely surface at trial means that the appellate court . . . may well be faced with approximately the same factual issue again, after trial. . . .
> The upshot is that . . . immunity appeals interfere less with the final judgment rule if they are limited to cases presenting neat abstract issues of law.
> We recognize that . . . a district court's denial of summary judgment . . . forces public officials to trial. And, to that extent, it threatens to undercut the very policy (protecting public officials from lawsuits) that . . . militates in favor of immediate appeals. Nonetheless, the countervailing considerations that we have mentioned (precedent, fidelity to statute, and underlying policies) are too strong to permit . . . appeals from orders of the sort before us.

*Id*. at 316-18 (citations omitted).

The dissent would have us conduct a plenary review of the record, draw our own conclusion about the materiality of the factual dispute, and substitute our opinion for that of the district court. I must agree with the majority opinion that *Jones* forbids this approach.

I concur in the majority opinion's holding that we are precluded from taking appellate jurisdiction over this otherwise interlocutory appeal because the district court's order was based on its finding that disputed issues of material fact remain for trial. *See id*. at 319.

12

No. 08-4238
*Hanson v. City of Fairview Park, et al.*

**McKEAGUE, Circuit Judge, dissenting.** The events culminating in the death of Scott Hanson are a senseless tragedy. However, we can not let a tragic event cloud our application of the law to the undisputed facts. While the parties do not agree on all the details leading up to Officer Brewer firing his weapon at Hanson, the record provides a clear picture of Mrs. Hanson's version of the facts. Based on Mrs. Hanson's version of the facts, and viewing them in a light most favorable to her, I would hold that this Court does have jurisdiction to hear Officer Brewer's appeal. In exercising that jurisdiction, I would further hold that Brewer is entitled to qualified immunity. I therefore respectfully dissent.

### I. Factual Background

On the evening of October 24, 2005, Pamela Hanson arrived home to find her husband Scott Hanson asleep in bed. The couple had a short verbal exchange, which led to Hanson becoming agitated and smashing items throughout the house.[1] In the course of his rage, Hanson destroyed a table, a mirror, a ceiling fan, and a coffee maker, among other items. The police photographs from the day show a scene of destruction throughout the home. The Fairview Park Police Department received two phone calls—one from Hanson's brother and the other from Mrs. Hanson—within a matter of minutes requesting assistance at the Hanson house. Hanson's brother advised that Hanson was "going a little beserk." Officer John Brewer was dispatched to the scene with the instruction that there was a "male out of control."

---

[1] Hanson had a history of mental illness and had apparently stopped taking his prescribed medications at the time of the incident.

13

Brewer arrived at the Hanson home moments later to find that Hanson had driven his Chrysler PT Cruiser through the closed garage door, out of the garage, and into the side of the house. By this time, Mrs. Hanson was inside the house, along with her parents. She did not witness any of the following events. As Brewer arrived on the scene, he heard a banging noise in the rear of the house and approached it to find Hanson with golf clubs in his hands smashing items in the garage. Hanson appeared "agitated" and "very angry" with "a lot of rage." After observing Hanson's behavior, Brewer called out "Sir!" to Hanson in an attempt to get his attention. Hanson turned his rage toward Brewer and immediately started coming at the defendant with the golf clubs still in his hands in an "out of control" and "dangerous" manner.

When Hanson was approximately 25 to 50 feet away, Brewer drew his gun and began backing down the driveway. Brewer identified himself as a police officer and instructed Hanson to stop where he was. Instead of stopping, Hanson continued "briskly" advancing toward Brewer and said something to the effect that he was "coming for" Brewer or had "something for" Brewer. Brewer was holding his gun with both hands at this point, as he had been trained to do, and continued instructing Hanson to stop as Hanson quickly advanced on him. Out of fear for his own safety and under the belief that it was his only option to protect himself, Brewer fired three shots at Hanson when he had closed to within 10 to 15 feet. All three shots struck Hanson; he died shortly thereafter at the hospital. The police dispatch transcripts from the day indicate that all of these events occurred within a matter of minutes.

Shirley Cooney lived across the street from the Hansons. She witnessed some portion of the events from inside her living room. She saw Brewer "talking with someone" in the backyard and

backing up as if "someone was coming toward him." She eventually saw Hanson "coming around

the corner of the house" and "closing in on" Brewer as Brewer backed down the driveway with his

gun drawn. She witnessed Brewer discharge his weapon at Hanson. Mrs. Cooney did not hear the

verbal exchange between Brewer and Hanson because the windows in her living room were closed.

While the above facts are undisputed in the record, the parties do dispute a few of the factual

details immediately preceding the shooting. Specifically, Mrs. Hanson contends, through the

testimony of Mrs. Cooney, that Hanson did not have golf clubs in his hands when Cooney first

observed him.[2] Brewer, on the other hand, states that Hanson had golf clubs in his hands and had

raised them over his head at the moment Brewer fired his weapon. Mrs. Hanson also argues that

Brewer has changed some of the adjectives and phrases he has used to describe Hanson's behavior

over the course of his numerous depositions and police statements, giving cause to question his

credibility. Yet for the reasons set forth below, these factual discrepancies are not dispositive. In

my opinion, even under Mrs. Hanson's version of the facts, taking them in a light most favorable to

her, Brewer was justified in using deadly force.

## II. Jurisdiction

At the outset, I address the majority's outright dismissal of the appeal for lack of jurisdiction.

The collateral order doctrine allows a defendant to appeal immediately a district court's order

denying summary judgment where "(1) the defendant was a public official asserting a defense of

---

[2] Mrs. Cooney's deposition indicates that she did not see Hanson until he came "around the corner of the house." Therefore, her testimony does not speak to the items in Hanson's hand while he was in the garage and advancing toward Brewer between the garage and the corner of the house.

qualified immunity; and (2) the issue appealed concerned, not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law." *Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008) (internal quotation marks omitted). The majority correctly notes that where the parties ask us to resolve factual disputes, we lack jurisdiction to hear the interlocutory appeal. *Johnson v. Jones*, 515 U.S. 304, 319 (1995). However, where the defendant raises a purely legal question—as is the case here—then this court does have jurisdiction to decide the issue. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005).

Here, Brewer raises a purely legal issue on appeal. Specifically, Brewer contends that he is entitled to qualified immunity because he reasonably believed that Hanson posed a serious and imminent threat to Brewer's safety. While Brewer's argument confuses some of the legal issues in his appeal,[3] this does not change the fact that "the court—not the jury—must consider the 'threshold question' of whether the 'facts alleged show the officer's conduct'" was reasonable under the circumstances. *Phillips v. Roane County*, 534 F.3d 531, 539 (6th Cir. 2008) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Brewer's appeal does not fail simply because he contests Mrs. Cooney's statement that Hanson did not have golf clubs in his hands when she first witnessed the event; he also presents the discrete legal issue of the reasonableness of his conduct. As the Supreme Court has held, and as our precedent dictates, the reasonableness of an officer's actions is a pure

---

[3] Defendant argues that the district court erred by implicitly imposing a duty to retreat. Nothing in the district court's ruling appears to impose such a duty. However, the defendant goes on to argue that he was entitled to qualified immunity because his actions were reasonable. He therefore presents a legal issue for this Court to resolve.

question of law for the court to decide at the summary judgment stage. *Marvin*, 509 F.3d at 244

(quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)).

In some of our previous cases, we have required the defendant to concede the plaintiff's

version of the facts before we evaluated the legal issue. *See, e.g., Harrison*, 539 F.3d at 517("[T]he

defendant must be prepared to . . . concede an interpretation of the facts in the light most favorable

to the plaintiff's case"); *Phillips*, 534 F.3d at 538 (stating that the defendant "must essentially

concede the most favorable view of the facts to the plaintiff"). However, the Supreme Court has not

required such a mechanical concession before evaluating whether a police officer acted reasonably.

*See Scott v. Harris*, 550 U.S. 372, 378 (2007) (reversing the lower court finding that the officer was

not entitled to qualified immunity because facts were in dispute). The Supreme Court has placed

emphasis on whether the facts in dispute are *genuine* or *material* to the outcome of the case, rather

than simply whether *any* factual dispute exists. *Id.* at 380 (emphasis added). The Court in *Scott*

noted that when a factual dispute exists, courts are required to evaluate the facts in a light most

favorable to the nonmoving party. *Id.* at 378. In this case, we have a full record available and

nothing prevents this court from evaluating the facts as Mrs. Hanson presents them, in a light most

favorable to her. The issue then becomes whether Brewer is entitled to qualified immunity under

Mrs. Hanson's set of facts, or whether the facts in dispute are material to deciding the outcome.

In dismissing Brewer's appeal, the majority errs by focusing exclusively on the district

court's stated reason for denying summary judgment. The majority spends much of its effort quoting

the district court's analysis on the facts in dispute. However, an appeal is not fatal simply because

the district court's holding is based on what the district court describes as a genuine issue of material

17

fact. *Estate of Carter*, 408 F.3d at 309. "Despite the label used by the district court, this court can consider whether 'the undisputed facts or the evidence viewed in the light most favorable to the plaintiff fail to establish a prima facie violation of clear constitutional law.'" *Id.* By relying solely on the district court's findings, the majority ignores the second part of our job: to determine whether the defendant presents a legal issue over which we may properly exercise jurisdiction. Notwithstanding some factual disputes, qualified immunity may still be appropriate if the plaintiff's version of the disputed facts "demonstrate that a hypothetical reasonable officer would not have known that his actions . . . were objectively unreasonable." *Scott v. Clay County*, 205 F.3d 867, 877 (6th Cir. 2000). Thus, in cases where a factual dispute exists, our job is to evaluate the plaintiff's version of the facts to determine whether the defendant acted reasonably, and not simply to accept the district court's stated reason for denying summary judgment.

The majority claims that this analysis implicates "fairness concerns" as to Mrs. Hanson because this "issue" was not presented to the court, and "qualified immunity . . . should first be decided by the district court." If the issue of qualified immunity was not presented to the court, what then did the district court rule on when it denied Brewer's motion for summary judgment? Mrs. Hanson was confronted with Brewer's qualified immunity argument and was given both time and opportunity to present her version of the facts both in the district court below and in this court. Thus, "fairness" is in no way implicated here. The majority also argues that exercising jurisdiction runs afoul to *Johnson* and claims that "parsing through the record" is the job of trial—not appellate—judges. By citing *Johnson* to support its holding, the majority ignores the Supreme Court's ruling in *Scott*, which clarified the analysis to be applied at the summary judgment stage. *See*

18

*Scott*, 550 U.S. at 380 ("The mere existence of *some* alleged factual dispute . . . will not defeat an otherwise properly supported motion for summary judgment." (internal quotations omitted)). Moreover, in claiming that "parsing through the record" is not our job, the majority disregards our precedent in qualified immunity cases which does exactly that—reviews the record. *See, e.g., Davenport v. Causey*, 521 F.3d 544, 547 (6th Cir. 2008) ("Because the district court did not identify what facts it found in dispute . . ., we have to engage in a cumbersome review of the record." (internal quotations omitted)); *Floyd v. City of Detroit*, 518 F.3d 398, 404 (6th Cir. 2008) ("A *review of the record*, however, demonstrates that the officers' qualified-immunity claims do not require us to consider whether there are genuine issues of fact for trial." (emphasis added)); *Gaddis v. Redford Township*, 364 F.3d 763, 766 (6th Cir. 2004) ("[T]he record on appeal includes a videotape . . . . We have carefully examined the tape along with the witnesses' testimony.").

By failing to evaluate the pure legal issue, the majority undermines the purpose of qualified immunity and weakens its availability for future defendants. Qualified immunity recognizes that the public interest is best served when officials can act "with independence and without fear of consequences" so long as their actions do not violate clearly established rights. *Moldowan v. City of Warren*, --- F.3d --- , No. 07-2115, 2009 WL 2497969 at *7 (6th Cir. Aug 18, 2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982); *Pierson v. Ray*, 386 U.S. 554 (1967)). It also protects officers from "undue interference with their duties and from potentially disabling threats of liability." *Sample v. Bailey*, 409 F.3d 689, 695 (6th Cir. 2005). Qualified immunity is more than a mere defense against the claim, but rather serves the more important role of providing immunity from suit. *Phillips*, 534 F.3d at 539 (quoting *Scott v. Harris*, 550 U.S. 372 (2007)). Once the

immunity is lost, it cannot be recaptured if the case goes to trial. *Id.* Thus, denying summary judgment any time a factual dispute arises could thwart the important public interest that qualified immunity serves. *Id.* To dismiss this case outright under the auspices of some factual dispute, without further inquiry regarding the materiality of the factual dispute, runs directly against the well established purposes behind qualified immunity.

Because I find that Brewer has presented a purely legal issue on appeal, I would hold that this court does have jurisdiction over the appeal. In resolving Brewer's legal issue, I accept as true Mrs. Hanson's version of the facts. That is, I assume that Scott Hanson was *not* holding any golf clubs at the time Brewer shot him. I now turn to the legal issue of whether Brewer is entitled to qualified immunity.

### III. Qualified Immunity

Qualified immunity shields government officials from liability "for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citations and internal quotations omitted). To determine whether a district court properly denied qualified immunity, this Court must examine: (1) whether, considering the evidence in the light most favorable to the plaintiff, a constitutional right has been violated and (2) whether that right was clearly established. *Harrison*, 539 F.3d at 517 (citing *Estate of Carter*, 408 F.3d at 310–11); *see also Saucier*, 533 U.S. at 201.

### A. Was there a Constitutional Violation?

"It is well-established that individuals have a constitutional right to be free from excessive force during an arrest," investigatory stop, or other seizure under the Fourth Amendment. *Baker v. City of Hamilton*, 471 F.3d 601, 606 (6th Cir. 2006) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). Apprehension by the use of deadly force constitutes a seizure, and accordingly, the officer's conduct in such situations is subject to the reasonableness constraints of the Fourth Amendment. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). The reasonableness of an officer's conduct presents a question of pure law for the court to answer by evaluating the facts in a light most favorable to the nonmoving party. *Marvin*, 509 F.3d at 244 (citing *Scott*, 550 U.S. at 381 fn.8).

The law recognizes that a police officer may not use deadly force unless "the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Garner*, 471 U.S. at 3; *see also Sova v. City of Mt. Pleasant*, 142 F.3d 898, 902 (6th Cir. 1998). The reasonableness test "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396–97. Additionally, more leeway is provided to the officer when the situation is tense or rapidly evolving, and the officer is therefore forced to "make split-second judgments." *Id.* at 396. In applying this test, we look to the totality of the circumstances. *Id*; *Dickerson v. McClellan*, 101 F.3d 1151, 1161 (6th Cir. 1996).

Based on the above test, the question in this case is whether, considering the relevant facts and circumstances, Brewer had an objectively reasonable belief that Hanson posed a threat of immediate and severe physical harm to the officer or others. As far as Brewer knew, Hanson was "out of control," "trashing the house," and violently destroying property. When he arrived on the

scene, he personally witnessed Hanson in the garage destroying property with golf clubs. He also saw the Hansons' PT Cruiser smashed into the side of the house. Under Mrs. Hanson's version of the facts, at the moment that Mrs. Cooney first saw Hanson emerge around the corner of the house, Hanson was unarmed and had his hands by his side as he advanced toward Brewer.

But the undisputed deposition statements of Brewer, coupled with those of Mrs. Cooney, establish that Hanson walked "briskly" toward Brewer, ignored Brewer's repeated orders to stop, and said something aggressive and personally threatening, to the effect of "I'm coming for you." [4] These same undisputed statements establish that Hanson had golf clubs in his hands and was smashing items in the garage when Brewer first called out to him. The undisputed police diagram of the scene also establishes that golf clubs were found outside of the garage, near Hanson's body, suggesting that Hanson had the clubs in his hands as he came out of the garage. Mrs. Hanson does not dispute that Hanson had golf clubs in his hands at some point as he advanced toward Brewer. Hence, the only disputed issue related to the golf clubs is the exact point at which Hanson no longer had them in his hands.

Based on this set of undisputed facts, a survey of our case law provides guidance in resolving the legal question of whether Brewer acted reasonably under the circumstances. That is, whether he had "probable cause to believe that the suspect pose[d] a significant threat of death or serious

---

[4] The district court apparently found a factual dispute over whether Hanson was advancing toward Brewer at the time of the shooting. However, this finding is not supported by the record. Mrs. Cooney clearly states that Hanson was advancing on Brewer. The district court also found a disputed issue as to whether defendant was trapped by the crashed PT Cruiser. This fact is inconsequential because Brewer was not required to retreat in the face of Hanson's threats.

physical injury to [him]." *Garner*, 471 U.S. at 3. Moreover, addressing this question in the context of the qualified immunity defense, I bear in mind that the plaintiff bears the burden of showing that the defendant is not entitled to qualified immunity. *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005). And the defense applies unless it is obvious that no reasonably competent officer would have concluded that the actions taken were unlawful. *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002). Previous case law provides book ends for determining when an officer acts reasonably in using deadly force and when he does not.

This Court has previously approved of the use of deadly force where the suspect was armed with a dangerous weapon and either attacked the police officers with the weapon or advanced toward them with the weapon in a threatening way. *See, e.g.*, *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 404–05 (6th Cir. 2007) (reversing denial of qualified immunity where suspect exited residence with rifle); *Untalan*, 430 F.3d at 315 (upholding qualified immunity where suspect brandished a butcher knife, stabbed an officer with it, and was involved in a struggle for the knife); *Gaddis*, 364 F.3d at 767 (upholding summary judgment on the merits where suspect had a knife, ignored requests to drop it, and struck at officer in what appeared to be an attempt to stab him); *Boyd v. Baeppler*, 215 F.3d 594, 604 (6th Cir. 2000) (reversing denial of qualified immunity where suspect had a gun in his hand and pointed it at officers and others); *Rhodes v. McDannel,* 945 F.2d 117, 120 (6th Cir.1991) (per curiam) (upholding qualified immunity where homeowner approached police officers with a raised machete and ignored repeated warnings to drop it); *DeMerrell*, 206 F. App'x at 424 (upholding qualified immunity where the uncontroverted evidence showed that the suspect "advanced on the officers with his gun pointed at them"). Deadly force has also been deemed

justified where an unarmed suspect physically attacked police officers. *See Davenport*, 521 F.3d at 553 (reversing denial of qualified immunity where the suspect resisted arrest, knocked one officer to the ground, and delivered blows to the other officer's head).

Deadly force was not deemed justified, however, where a suspect was unarmed, allegedly had his hands extended in front of him, and the police "ran around the corner and shot him in his own backyard without warning." *Floyd*, 518 F.3d at 407. Even in cases where a suspect was armed, deadly force has been deemed not justified where the suspect was not approaching the police or brandishing the weapon in a threatening manner. For instance, deadly force was held not justified where a suspect's vehicle was "moving slowly and in a non-aggressive manner, could not have hit any of the officers, and was stationary at the time of the shooting." *Kirby v. Duva*, 530 F.3d 475, 482 (6th Cir. 2008); *see also Smith v. Cupp*, 430 F.3d 766, 774–75 (6th Cir. 2005) (holding that suspect who had taken control of officer's patrol car, although he was in possession of a dangerous weapon, "was not threatening the lives of those around him" because officer was never in the suspect's line of flight and had already been passed by the car when he shot the suspect).

The facts in this case—an unarmed suspect advancing "briskly" toward an officer and verbally threatening the officer after the officer had drawn his gun and instructed him to stop—do not fit neatly within either of the above categories. Other circuits have evaluated facts similar to these. The Tenth Circuit has reversed the district court's denial of qualified immunity where a suspect "was confrontational and aggressive" and "repeatedly refused to comply with the reasonable requests of law enforcement and continued his approach towards [the officer], ultimately reaching toward the deputy's gun." *Blossom v. Yarbrough*, 429 F.3d 963, 967–68 (10th Cir. 2005). Because

the officer was uncertain as to whether the suspect was armed, and because the suspect advanced on the officer in what reasonably appeared to be an effort to get his weapon, the court held that the suspect posed an immediate threat to the officer's safety. *Id.* at 968. Similarly, the Ninth Circuit has upheld qualified immunity where officers used deadly force against a suspect "running down a poorly lit alley toward them" where they heard a radio report that a suspect in a recently committed felony was running from the area with a shotgun. *Watson v. City of Long Beach*, No. 94-56357, 1996 WL 338219, at *1 (9th Cir. 1996).

Here, the fact that Hanson was unarmed is not outcome-determinative; it is clearly possible to be both unarmed and dangerous. *See Davenport*, 521 F.3d at 553. But the issue is whether defendant had probable cause to believe that Hanson posed a threat of both imminent and serious danger. Taking the undisputed facts of this case as a whole, I would hold that he did. Hanson—a 6'1" 200-pound man—quickly and aggressively advanced toward defendant. As in *Yarbrough*, he repeatedly refused to comply with Brewer's requests to stop. Although Brewer does not allege that Hanson attempted to reach for defendant's weapon, Hanson certainly could have done so had he gotten close enough. In addition, Hanson gave Brewer another reason to believe that he was dangerous when, in the midst of a violent rampage, he said "I'm coming for you." Clearly, this verbal threat indicated a probability of physical violence.

Moreover, Brewer's actions must be judged from his perspective at the scene—not with the benefit of hindsight—and more leeway should be given in tense, rapidly evolving situations. *Graham*, 490 U.S. at 396–97. Brewer said Hanson appeared "dangerous" and was only 25 to 50 feet away when he drew his weapon. The defendant in this case acted reasonably in drawing his weapon

25

when Hanson was advancing toward him making verbal threats with golf clubs in his hands. Brewer's undisputed statements also indicate that he was holding his weapon in both hands, as he had been trained to do, and with Hanson briskly advancing toward him 10 to 15 feet away, could stop the threat only by firing his weapon. Under these facts, Brewer cannot be said to have acted unlawfully.

In deciding not to exercise jurisdiction, the majority asserts that the reasonableness of Brewer's conduct would somehow be different if the deceased had dropped the golf clubs while threatening and rapidly advancing towards Brewer. The majority provides no analysis and cites to no precedent in support of this bald conclusion. In fact, a careful analysis of case law from this circuit, as well as others, demonstrates that Brewer's conduct was reasonable. In contrast, the majority's position lacks any legal foundation whatsoever.

To say that Brewer could be deemed to have acted *unreasonably* in using deadly force, when a 200-pound suspect was briskly advancing toward him and making verbal threats after the officer had justifiably drawn his weapon, in the factual context of this case, ignores the careful analysis demanded by our prior precedents. In his undisputed deposition testimony, Brewer states that he had no other option to protect himself in the quickly unfolding event except to discharge his weapon. The reasonableness inquiry in excessive force cases contains a "built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary." *Marvin*, 509 F.3d at 245. The law does not require a police officer with weapon drawn to take his attention away from a suspect, who is aggressively and threateningly advancing toward him in close range, so that he can engage his pepper spray or baton. Nor can we "substitut[e] our personal notions of proper police procedure

26

for the instantaneous decision of the officer at the scene." *Dickerson*, 101 F.3d at 1163. The majority is apparently comfortable in demanding that police officers not act to protect their own safety and in second-guessing the form of protection the officer uses. This is not what the law demands. Brewer was not required to switch to a different form of defense simply because the majority would find it desirable. In fact, there is no basis in the record to conclude that this was even feasible, once he had justifiably drawn his weapon and was holding it in both hands, as he was trained to do, and Hanson was advancing rapidly toward him, getting within 10 to 15 feet before the first shot was fired. Brewer was only required to use a *reasonable* form of defense. *See Dickerson*, 101 F.3d at 1160 ("[T]he Fourth Amendment does not require officers to use the best technique available as long as their method is reasonable under the circumstances.").

Irrespective of the time at which Hanson dropped the golf clubs, his actions were sufficient to give Brewer probable cause to believe that Hanson posed a threat of immediate and severe physical harm, especially considering that this was a quickly unfolding situation in which Brewer was forced to make a split-second judgment. Accordingly, in my opinion Brewer's use of deadly force was justified even under Mrs. Hanson's version of the facts. A reasonably competent officer would not conclude that his actions were unlawful under this set of facts. The analysis could end there, with the conclusion that Brewer acted reasonably and is therefore entitled to qualified immunity. However, in the interest of thoroughness, I undertake to evaluate the second part of the test. That is, assuming that Brewer did not act reasonably, was the law clearly established?

**B. Was the Law Clearly Established?**

Even if Brewer violated Hanson's constitutional right, he is still entitled to qualified immunity unless it can be said that the constitutional right was clearly established at the time. A constitutional right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. But the right must be "clearly established" in a particularized sense: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "This is not to say that official action is protected by qualified immunity unless the very action in question has been held unlawful." *Id.* As the Supreme Court has noted, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Safford Unified Sch. Dist. v. Redding,* 129 S.Ct. 2633, 2643 (2009) (citing *Hope*, 536 U.S. at 741). But "in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640.

"In determining whether a reasonable officer would have known that his conduct was unlawful, this Court looks first to the precedents of the Supreme Court, then to case law from this circuit, and finally to decisions from other circuits." *Baker v. City of Hamilton*, 471 F.3d 601, 606 (6th Cir. 2006). Nothing from the above surveyed precedents would give Brewer notice that his conduct in this situation was unlawful. As noted above, the facts in this case do not fit neatly within our precedents. Yet neither has Mrs. Hanson, who bears the burden, pointed to any authority in our case law or that of other circuits that would make it apparent to Brewer that his conduct was *unlawful*. Qualified immunity serves to "protect officers from the sometimes hazy border between excessive and acceptable force." *Marvin*, 509 F.3d at 243. This case fits squarely within that

28

purpose. Neither the Supreme Court nor the Sixth Circuit has evaluated facts similar to these, but other circuits have, in analogous circumstances, held that an officer's use of deadly force was reasonable. Hence, in my opinion, it can not be said that Brewer violated any clearly established constitutional right.

Having carefully evaluated the undisputed facts and the district court's opinion, I find that the issues in dispute do not deprive this Court of jurisdiction to hear Brewer's legal claim. I also find, under the Mrs. Hanson's version of the facts, that Brewer is entitled to qualified immunity. Accordingly, I respectfully dissent.